UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE
CASE NO. 3:14-CV-517

KENRIC WISE                                                                                    Plaintiff,

v.

PINE TREE VILLA, LLC, *et al.*                                                      Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss. (Docket No. 12).

Plaintiff has replied, (Docket No. 22), and Defendants have responded, (Docket No. 30). This

matter is now fully briefed and ripe for adjudication. For the following reasons, the Defendants'

Motion (Docket No. 11) is **GRANTED in part and DENIED in part**.

## BACKGROUND

The Defendant Pine Tree Villa, LLC d/b/a Regis Woods Care and Rehabilitation Center

provided nursing home care to the Plaintiff, Kenric Wise, between June 5, 2013 and March 3,

2014. The Plaintiff claims that the treatment he received "accelerated the deterioration of his

health beyond that caused by the normal aging process." (Docket No. 1 at 14). He alleges

injuries including pressure ulcers, overmedication, medication errors, unnecessary pain, choking,

malnutrition, falls, emotional distress, and a loss of personal dignity. *Id.*

The Plaintiff attributes his injuries to negligence of the nursing home (Counts I – III), its

administrator (Count V), and its staff (Count VI – VII). These actions, according to the Plaintiff,

violated the Plaintiff's "Long Term Care Resident's Rights" under Kentucky statute (Count IV).

Count I alleges a claim of common law negligence against the Nursing Home Defendants.[1] Wise alleges that they violated their duty to provide Wise the care, services, and supervision that a reasonably careful nursing home would provide under similar circumstances. Wise provides a list of the Nursing Home Defendants' acts and omissions, including, among others, the failure to: 1) develop and follow policies to assist Wise in attaining and maintaining a high level of well-being; 2) maintain records on Wise in accordance with professional standards and practices; 3) revise Wise's care plan to reflect changes in his status; 4) provide the minimum number of qualified personnel to meet Wise's needs; 5) provide adequate nursing and other staff that was properly qualified and trained; 6) administer and secure appropriate medical care after falls; and 7) timely diagnose medical conditions.  Wise also alleges that the nursing staff did not follow medication orders from hospital physicians, and improperly medicated Wise.  Count I also alleges negligence *per se*:

> Pursuant to KRS § 446.070, Plaintiff also alleges Nursing Home Defendants violated statutory and regulatory duties of care, the violations of which are actionable as negligence *per se*. Kenric Wise was injured by the statutory violations of Nursing Home Defendants and was within the class of persons for whose benefit the statutes were enacted and who was intended to be protected by these statutes. The negligence *per se* of Nursing Home Defendants included, but is not limited to, violation(s) of the following:
>> (a) Violation(s) of KRS § 209.005 et seq. and the regulations promulgated thereunder, by abuse, neglect and/or exploitation of Kenric Wise;
>> (b) Violations(s) of the statutory standards and requirements governing licensing and operation of long-term care facilities as set forth by the Cabinet for Health and Family Services, pursuant to provisions of KRS Chapter 216 and the regulations promulgated thereunder, as well as the applicable federal laws and regulations governing the certification of long-term care facilities under Titles XVIII or XIX of the Social Security Act.

---

[1] Defendants Pine Tree Villa, LLC d/b/a Regis Woods; Genesis Healthcare, LLC; Genesis Eldercare Rehabiliation Services, LLC; GHC Holdings II, LLC; Harborside Holdings I, LLC; Harborside Healthcare Advisors Limited Partnership f/ka/ KHC Partners Limited Partnership; Harborside Healthcare LLC, f/k/a Harborside Healthcare Corporation; HBR Kentucky, LLC; Sun Healthcare Group, LLC; Sunbridge Healthcare, LLC will be referred to collectively as the "Nursing Home Defendants."

Count II is a claim of medical negligence against the Nursing Home Defendants. Count III is a claim of corporate negligence against the Nursing Home Defendants.

Count IV is a claim of violation of long term care residents' rights and statutory duties under KRS 216.510, pursuant to KRS 216.515(26).  The allegations include violation of the following rights: 1) to be treated with consideration and respect; 3) to have a responsible party or family member informed of any accident; 3) to have an adequate and appropriate resident care plan developed; and 4) to be free from abuse and neglect.

Count V is a claim of negligence against Josh Schindler, in his capacity as Administrator of Regis Woods.  The allegations include his failure to: 1) hire and train adequate numbers of qualified staff; 2) test employees for competence; 3) discipline or terminate employees that were known to be careless, incompetent, or unwilling to comply; 4) provide a safe environment; and 5) adopt policies and procedures for investigating violations and complaints.  Additionally, Wise alleges that Schindler failed to "administer Regis Woods in compliance with federal, state, and local laws, regulations, and codes intended to protect nursing home residents . . . ."

Count VI is a claim of negligence against Jane Does 1-2, unknown defendants believed to be nurses, who Wise alleges failed to provide him reasonable care.  Finally, Count VII is a claim of negligence against Jane Does 3-5, unknown defendants who provided Wise with medical care and who Wise alleges breached their duty by failing to provide reasonable care under the circumstances.

## STANDARD

The Federal Rules of Civil Procedure require that pleadings, including complaints, contain a "short plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A defendant may move to dismiss a claim or case because the complaint fails

to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b).  When considering a Rule 12(b)(6) motion to dismiss, the court must presume all of the factual allegations in the complaint are true and draw all reasonable inferences in favor of the nonmoving party.  *Total Benefits Planning Agency, Inc*., 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983)).  "The court need not, however, accept unwarranted factual inferences."  *Id*. (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

Even though a "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  Instead, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id*. (citations omitted).  A complaint should contain enough facts "to state a claim to relief that is plausible on its face."  *Id*. at 570.  A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).  If, from the well-pleaded facts, the court cannot "infer more than the mere possibility of misconduct, the complaint has alleged—but has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id*. at 1950 (citing Fed. R. Civ. P. 8(a)(2)).  "Only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id*.

## DISCUSSION

### 1) Plaintiff's negligence *per se* claims based on violations of federal law

4

The Defendants argue that under Kentucky law, a negligence *per se* claim pursuant to KRS § 446.070 cannot be based on violations of federal statutes and regulations. (Docket No. 12). The Defendants further argue that there is no private right of action for violations of federal nursing home certification laws. *Id.* Thus, Defendants argue that Plaintiff's claims in Count I alleging negligence *per se* based on federal law must be dismissed. In response, the Plaintiff states that he is not bringing private rights of action for statutory violations, and that rather his claims are common law claims; he argues that the Defendants are conflating the standard of care with the concept of creating a new and independent cause of action. (Docket No. 22). The Plaintiff argues that the regulations can be used to establish standards of care for the common law action of ordinary negligence. *Id.*

KRS 446.070 codifies the common-law doctrine of "negligence *per se*" in Kentucky. *Davidson v. American Freightways, Inc.*, 25 S.W.3d 94, 99 (Ky. 2000). Negligence *per se* "is merely a negligence claim with a statutory standard of care substituted for the common law standard of care." *Real Estate Marketing, Inc. v. Franz*, 885 S.W.2d 921, 926–27 (Ky. 1994) (internal quotation omitted). KRS 446.070 permits a damaged party to sue for a violation of a statutory standard of care, if the statute in question does not provide a civil remedy and if the party is within the class of persons the statute is intended to protect. *Hargis v. Baize*, 168 S.W.3d 36, 40 (Ky. 2005). It provides that "[a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation." KRS 446.070.

Kentucky courts have held that the "any statute" language in KRS 446.070 is limited to Kentucky statutes and does not extend to federal statutes and regulations or local ordinances. *Young v. Carran*, 289 S.W.3d 586, 589 (Ky. App. 2008); *T & M Jewelry, Inc. v. Hicks ex rel.*

*Hicks*, 189 S.W.3d 526, 530 (Ky. 2006); *Alderman v. Bradley*, 957 S.W.2d 264, 266–67 (Ky. App. 1997). The legislature did not intend the statute "to embrace the whole of federal laws and the laws of other states and thereby confer a private civil remedy for such a vast array of violations." *T & M Jewelry, Inc*., 189 S.W.3d at 530.

Therefore, as a matter of law, the Plaintiff may not assert a negligence *per se* claim under Kentucky law based on violation of the federal statutes and regulations at issue in this action. It is clearly established that "[v]iolations of federal laws and regulations and the law of other states do not create a cause of action based on KRS 446.070." *St. Luke Hosp., Inc. v. Straub*, 354 S.W.3d 529, 534 (Ky. 2011) (internal citation omitted); *see also Pace v. Medco Franklin RE, LLC*, 2013 WL 3233469 (W.D. Ky. June, 25, 2013). The "any statute" language of KRS § 446.070 relates only to Kentucky's state law and does not embrace federal statutes or regulations. The Plaintiff's negligence *per se* claim based on violation of federal law fails as a matter of law and will be dismissed.

**2) Plaintiff's negligence *per se* claims based on violations of state law**

    **a.      KRS Chapter 216**

Next, the Defendants argue that under Kentucky law, a negligence *per se* claim pursuant to KRS § 446.070 cannot be based on violations of state statutory standards and requirements governing licensing and operation of long term care facilities pursuant to provisions of KRS Chapter 216 and the regulations promulgated thereunder.  (Docket No. 12).  The Defendants argue that a generalized right to bring a negligence *per se* claim for the violation of any provision of KRS Chapter 216 is foreclosed as a matter of law by the specific private remedies authorized by KRS 215.515(26).  *Id.*  The Plaintiff responds that the statute provides the standard of care for the negligence claim; further, he argues that the Plaintiff is a member of the class of persons

intended to be protected by the regulation, and the injury is one that the regulation was designed to prevent.  (Docket No. 22).

As a whole, Chapter 216 "imposes specific licensure and public health standards on Kentucky long-term care facilities." *Vanhook v. Somerset Health Facilities, LP*, 2014 WL 7075265 at *9 (E.D. Ky. Dec.15, 2014); KRS § 216.510–600. Chief among its provisions is KRS § 216.515, which specifically "enumerates the rights of residents in long-term care facilities and defines the duties of such facilities." *Id*. This provision states that "any resident whose rights as specified in this section are deprived or infringed upon shall have a cause of action against any facility responsible for the violation." KRS § 216.515(26).

However, KRS § 446.070 does not create a private right of action for violations of the general provisions of KRS Chapter 216.  *Vanhook, LP*, 2014 WL 7075265 at *4.  The court in *Vanhook* concluded that "[t]he specific enumeration of resident's rights and the provision of a civil remedy in KRS § 216.515 preclude a negligence *per se* action to enforce the general provisions of Chapter 216." *Id*. at *9 (citing *Pace v. Medco Franklin RE, LLC*, 2013 WL 3233469 at *6 (W.D. Ky. June 25, 2013)).  In support, the court noted that the resident's rights provision "'evidences the legislature's intent and ability to create private rights of action for some of the provisions found in KRS Chapter 216 to the exclusion of others.'" *Id*. (citing *Pace*, 2013 WL 3233469 at *6). Accordingly, the court dismissed the plaintiff's negligence *per se* claim predicated on violations of the general provisions of KRS Chapter 216, while the plaintiff's claims under KRS § 216.515(26) survived.

The court in *Halcomb v. Britthaven, Inc.* applied *Vanhook* to a similar set of facts, reaching the same result.  2015 WL 998560 at *3, *4 (E.D. Ky. March 5, 2015).  The court also addressed the Plaintiff's argument that KRS § 216.515(26) allowed her to pursue a negligence

*per se* claim, in addition to a residents rights action, because the statute states that "[t]he remedies provided in this section are in addition to and cumulative with other legal and administrative remedies available to a resident and to the cabinet." *Id.* The court disagreed, finding that that provision "simply clarifies that [the plaintiff] need not choose between a resident's rights action and a negligence or wrongful death action. Nothing in this clause automatically entitles [the plaintiff] to bring a negligence *per se* claim based on broader violations of KRS Chapter 216. In fact, *Vanhook* holds that KRS § 216.515 precludes such a claim." *Id.* at *4.

Similarly here, the Plaintiff attempts to base his negligence *per se* claim in part on violations of KRS Chapter 216. However, he is precluded from doing so, and thus the Plaintiff's negligence *per se* claim based on violation of Chapter 216 will be dismissed.

### b.   KRS Chapter 209

The Plaintiff alleges abuse, neglect, and/or exploitation in violation of KRS Chapter 209. (Docket No. 1). The Defendants argue that the Plaintiff cannot base his negligence *per se* claims on KRS Chapter 209 either. (Docket No. 12). The Defendants argue that the Kentucky Adult Protection Act ("KAPA") does not grant a right of enforcement to individuals, rather it vests the state of Kentucky with an obligation to investigate and prosecute instances of adult abuse reported to the state. *Id.* Further, the Defendants argue that the statute does not prescribe any statutory standard of care. The Plaintiff responds that the statutes seek to protect a class of persons to which the plaintiff belonged, they are designed to prevent the injuries he suffered, and they incorporate definitive, non-vague standards. (Docket No. 22).

Chapter 209 of the Kentucky Revised Statutes codifies the KAPA, which primarily aims to protect vulnerable adults from abuse, neglect, or exploitation. *See* KRS § 209.010(1)(a). The

Court in *Vanhook* found that a negligence *per se* claim could properly be based on violations of KAPA's criminal abuse provision.    Applying the three prong test, the *Vanhook* court first found the criminal abuse provision provided no direct civil remedy to the aggrieved party. *Vanhook,* 2014 WL 7075265 at *13. Because KAPA aims to protect vulnerable adults, and because the plaintiff was a physically infirm nursing home resident, the court next concluded that the decedent fell within the class of people protected by KAPA. *Id*. Finally, the court found that the plaintiff had suffered the type of injury—namely, abuse and neglect—that KAPA aims to prevent. *Id*. Thus, the plaintiff in *Vanhook* stated a negligence *per se* claim predicated on violations of KAPA's criminal abuse provision. *Id.*

Here, assuming the factual allegations in the Complaint to be true, Wise is within the class of persons that the KAPA was designed to protect. *See Vanhook*, at *11; KRS § 209.020(4). Since Wise is within the class of persons protected by the statute, and since the statute is silent as to any other civil remedy, § 446.070 provides a cause of action for violation of the criminal provisions in KRS § 209.990(2)-(7).    Thus, the motion is denied as to these portions of the Plaintiff's claim.

**3) The Plaintiff's claims under KRS § 216.515(26)**

    **a.    Definition of the word "resident"**

The Defendants argue that the Plaintiff lacks standing to bring suit pursuant to KRS § 216.515(26), as alleged in Count IV and V.  (Docket No. 12).  The Defendants argue that the statute protects a resident of a long-term care facility during, but only during, his or her residence and that claims do not survive the residency.  *Id.*  Because the Plaintiff is no longer admitted, he is no longer a resident.  The Defendants argue that had the legislature intended for former

residents to fall within the purview of this statute, it would have added explicit language to accommodate its intentions.  *Id.*  Further, they argue that:

> As the statute's express language provides: 'The action may be brought by in any court of competent jurisdiction to enforce such rights and to recover actual and punitive damages for any deprivation or infringement on the rights of a resident.' The express use of the mandatory conjunctive 'and' in the statute's language leaves no doubt that Kentucky's Legislature intended to create a remedy for the resident during his/her period of residency, because (and otherwise, logically) there is no need to "enforce" Mr. Wise's resident's rights after his residency ended.

*Id.*

In response, the Plaintiff argues that the statute is not merely a specific performance measure, because it provides for legal actual damages as well as punitive damages.  (Docket No. 22).  Further, the Plaintiff states that the General Assembly would not "intend to shield a facility from liability under this statute through simple discharge of the resident."  *Id.*  Finally, the Plaintiff cites to *Wilcoxson v. Golden Gate Nat. Senior Care, LLC*, 2013 WL 6097884 (W.D. Ky. Nov. 20, 2013), a case in which this Court held that KRS § 216.515(26) allowed the administrator of the estate of a deceased nursing home resident.

In reply, the Defendants note that the rights enumerated in the statute are only useful to a living human being while in a facility, and state that they are concerned about double recovery for one set of injuries.  (Docket No. 30).

KRS § 216.515(26) states:

> Any resident whose rights as specified in this section are deprived or infringed upon shall have a cause of action against any facility responsible for the violation. The action may be brought by the resident or his guardian. The action may be brought in any court of competent jurisdiction to enforce such rights and to recover actual and punitive damages for any deprivation or infringement on the rights of a resident. Any plaintiff who prevails in such action against the facility may be entitled to recover reasonable attorney's fees, costs of the action, and damages, unless the court finds the plaintiff has acted in bad faith, with malicious purpose, or that there was a complete absence of justifiable issue of either law or fact. Prevailing defendants may be entitled to recover reasonable attorney's fees. The remedies provided in this section are in addition to and cumulative with other legal and administrative remedies available to a resident and to the cabinet.

"Resident" means any person who is admitted to a long-term-care facility as defined in KRS 216.515 to 216.530 for the purpose of receiving personal care and assistance.  KRS § 216.510(2).

It is well established that in construing a statute, the Court must strive to give effect to the intent of legislature. *E.g., Dept. of Revenue, Fin., & Admin. Cab. v. Cox Interior, Inc.*, 400 S.W. 3d 240, 242 (Ky. 2013). To the extent possible, the Court derives that intent from the language chosen by the legislature, "either as defined by the General Assembly or as generally understood in the context of the matter under consideration." *Id*. (quoting *Shawnee Telecom Res., Inc. v. Brown*, 354 S.W.3d 542, 551 (Ky. 2011)). The Court will not insert a restrictive clause into the statute that does not exist. *Gilbert v. Commonwealth*, 291 S.W.3d 712, 716 (Ky. App. 2008) ("If the language is clear and unambiguous and if applying the plain meaning of the words would not lead to an absurd result, further interpretation is unwarranted"). Further, statutes designed to protect the public should be interpreted liberally. *De Hart v. Gray*, 245 S.W.2d 434, 435–36 (1952).

Here, the Court finds that the plain meaning of "resident" leads to an interpretation that includes former residents as well as current residents.  Here, Wise was admitted to the facility as alleged in his Complaint.  The General Assembly could have included restrictive language in the statute (e.g. "current resident") but did not do so.  *See Gilbert v*, 291 S.W.3d at 716.  Further, this Court's decision in *Wilcoxsin* interpreted the statute to grant standing to an administrator of the estate of a deceased nursing home resident.  2013 WL 6097884 (W.D. Ky. Nov. 20, 2013).  The fact that the statute permits recovery by the estate of a deceased former resident belies the Defendants' argument that the statute is only intended to provide equitable relief to current residents.  Finally, the Defendant's suggested interpretation would lead to a situation where a nursing home could discharge a resident to avoid liability under the statute, or where a resident

11

would be forced to remain in a poor facility until he or she had filed a lawsuit under this statute.

Thus, the Court holds that Wise does have standing under KRS § 216.515(26).

### b.      Definition of the term "facility"

The Defendants next argue that the right to enforce residents' rights exists only against the facility, not any other related entities.  (Docket No. 12).  Thus, they argue that all claims under this statute against Defendants except Pine Tree Villa, LLC must be dismissed.  *Id.*  In response, the Plaintiff notes that the Defendants did not offer argument or citation supporting their contention that the definition of facility should be limited, and argues that other named entities are also liable for the statutory violations.  (Docket No. 22).

KRS § 216.515(26) states that "[a]ny resident whose rights as specified in this section are deprived or infringed upon shall have a cause of action against any facility responsible for the violation."

> Long-term-care facilities' means those health-care facilities in the Commonwealth which are defined by the Cabinet for Health and Family Services to be family-care homes, personal-care homes, intermediate-care facilities, skilled-nursing facilities, nursing facilities as defined in Pub. L. 100-203, nursing homes, and intermediate-care facilities for the intellectually and developmentally disabled.

KRS § 216.510(1).

The Defendants in *Wilcoxson v. Golden Gate Nat. Senior Care, LLC*, 2013 WL 6097884 (W.D. Ky. Nov. 20, 2013) made a similar argument.  There, this Court stated that while it agreed that "the Kentucky Resident's Rights statute speaks in terms of the "long-term-care facility," it "finds no reason to dismiss any of the Defendant entities on the basis that such entity would have no liability to Plaintiff."  *Id.* at *4.  The Court then denied that portion of the Defendants' motion.  Similarly here, the Court does not find at this time that the other Defendants have no liability under the statute to the Plaintiff and this portion of the Defendants motion will be denied.

**CONCLUSION**

For these reasons, and consistent with the Court's conclusions above,

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss, (Docket No. 12), is **GRANTED in part and DENIED in part**.